IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-01894-WJM-MEH

JOVONIE MONTEZ,

    Plaintiff,

v.

ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY,

    Defendant.

---

# RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Michael E. Hegarty, United States Magistrate Judge.**

Before the Court are Plaintiff's Motion to Modify Scheduling Order [filed June 21, 2012; docket #33] and Plaintiff's Motion Seeking Leave of Court to Amend Complaint [filed June 21, 2012; docket #34]. Pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and D.C. Colo. LCivR 72.1C, the motions have been referred to this Court for disposition and recommendation, and the matters are now fully briefed. For the reasons that follow, the Court respectfully recommends that Plaintiff's motions be **denied**.[1]

---

[1] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *Niehaus v. Kansas Bar Ass'n*, 793 F.2d 1159, 1164 (10th Cir. 1986).

**I.     BACKGROUND**

Defendant Allstate removed this action from Denver County District Court on July 20, 2011. Docket #1. This Court held a scheduling conference on October 6, 2011, and set, among other deadlines, a deadline for joinder of parties and amendment of pleadings for November 21, 2011. *See* docket #15. Plaintiff Montez filed an Amended Complaint on October 14, 2012, dropping Josette Gonzales as a plaintiff and the statutory claims brought by the plaintiffs; thus, the amended claims brought by Montez are a claim for declaratory judgment and a claim for breach of contract. *See* docket #17. Through this action, Montez seeks reformation of the contract to provide insurance coverage and actual damages. *Id.*

Essentially, Montez alleges that her mother purchased a 2002 GMC Envoy in 2006, but she titled it in the name of Joseph Garcia, with whom she and her mother were living. At the time of purchase, Allstate added the GMC Envoy to Garcia's insurance policy. Montez alleges that Allstate knew Gonzales had an ownership interest in the GMC Envoy; that Gonzales, not Garcia, was making all of the monthly loan payments on the vehicle; that Gonzales, not Garcia, was the primary driver of the vehicle; and that Gonzales wanted full auto insurance coverage on the vehicle. In addition, Gonzales, not Garcia, paid the premiums due on the GMC Envoy directly to Allstate. Montez contends that, based on Allstate's acceptance of the premiums Gonzales paid, Gonzales reasonably expected that she and Montez (resident minor daughter) had full coverage under the insurance policy.

On or about March 13, 2010, Montez was seriously injured in a motor-vehicle accident. Montez alleges that at the time of the accident, Montez qualified for UIM coverage and the policy had UIM limits of $250,000.00, which is less than or equal to Montez' damages. Allstate filed an answer to the Amended Complaint on October 28, 2011, substantially denying Montez' allegations.

Through the present motions, Montez seeks to modify the deadline for joinder and

amendment in this case to June 21, 2012, and to amend the operative pleading to add Josette Gonzales again as a plaintiff and add a claim for Implied Contract/Unjust Enrichment against Allstate.

Allstate opposes Montez' motion to modify the deadline arguing primarily that Montez knew the facts underlying the proposed amended claim at the time she filed her original and amended complaints. In addition, Allstate counters that joinder and amendment is improper because the amendments are futile, unduly delayed and prejudicial.

## II.    LEGAL STANDARDS

Because Plaintiff filed her motion after the deadline set forth in the Scheduling Order for amendment of pleadings, granting Plaintiff's motion pursuant to Rule 15(a) would require a modification of the Scheduling Order. Thus, the Court employs a two-step analysis. First, the Court evaluates whether Plaintiff demonstrates good cause to allow modification of the Scheduling Order. Second, if Plaintiff shows good cause, she must also meet the requirements of Fed. R. Civ. P. 15(a).

### A.    Amendment of Pleadings

Rule 15 of the Federal Rules of Civil Procedure provides that, following a 21-day period for service of the complaint or service of a responsive pleading or Rule 12 motion, a party may amend its complaint only by leave of the court or by written consent of the adverse party. Fed. R. Civ. P. 15(a) (2012). Rule 15 instructs courts to "freely give leave when justice so requires." *Id.* "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

The grant or denial of leave is committed to the discretion of the district court. *See Duncan v. Manager, Dep't of Safety, City & Cnty. of Denver*, 397 F.3d 1300, 1315 (10th Cir. 2005). Leave to amend should be refused "only on a showing of undue delay, undue prejudice to the opposing

party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Id.*; *see also Foman,* 371 U.S. at 182.

      B.      Modification of Scheduling Order

A Scheduling Order may be modified only upon a showing of "good cause" under Fed. R. Civ. P. 16(b). The standard for "good cause" is the diligence demonstrated by the moving party in attempting to meet the Court's deadlines. *Colorado Visionary Acad. v. Medtronic, Inc.*, 194 F.R.D. 684, 687 (D. Colo. 2000). "Rule 16 erects a more stringent standard [than Rule 15(a)], requiring some persuasive reason as to why the amendment could not have been effected within the time frame established by the court." *Id.* In order to show good cause, the movant "must provide an adequate explanation for any delay" in meeting the Scheduling Order's deadline. *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1205 n.4 (10th Cir. 2006).

Notably, rigid adherence to the Scheduling Order is not advisable. *Sil-Flo, Inc. v. SHFC, Inc.*, 917 F.2d 1507, 1519 (10th Cir. 1990). A failure to seek amendment within the deadline may be excused if due to oversight, inadvertence or excusable neglect. *Id.* Additionally, learning information underlying the amendment through discovery that occurs after the deadline set forth in the Scheduling Order constitutes good cause to justify an extension of that deadline. *Pumpco, Inc. v. Schenker Int'l, Inc.*, 204 F.R.D. 667, 668 (D. Colo. 2001).

**III.    ANALYSIS**

      A.      Motion to Modify Scheduling Order

The Court begins its analysis by determining whether Plaintiff demonstrates good cause to modify the scheduling order. Citing *Pumpco, supra*, Plaintiff contends that good cause arises from "new" factual information learned at a recent deposition of Defendant's representative, which supports her proposed amended claim for quasi-contract/unjust enrichment. Accordingly, the Court will analyze whether the information Plaintiff learned from the deponent is, in fact, newly learned and

supports the proposed amendment.

According to the Plaintiff, during the deposition of Margarita Munoz on May 9, 2012, the deponent testified that (1) Josette Gonzales, Plaintiff's mother, did in fact make direct check payments from her personal account to Allstate, which were cashed by Allstate, as well as possibly made more direct payments to Allstate through cash or phone payments; (2) that Allstate deposited these monies, and made money because of Josette Gonzales's direct payments; (3) that Josette Gonzales received no benefit to which she would not already be entitled as a permissive driver under the policy provisions; and (4) that it was possible Josette Gonzales thought she was insured under the policy. Motion, ¶ 20, docket #34. Plaintiff argues that this information serves to support a claim for quasi-contract/unjust enrichment and that Plaintiff did not know this information before the deposition and before receiving the deposition transcript on May 18, 2012.

First, the Court notes the parties cite the same elements necessary to prove a quasi-contract/unjust enrichment claim, which were set forth in *Cablevision of Breckenridge, Inc. v. Tannhauser Condominium Ass'n*, 649 P.2d 1093 (Colo. 1982). However, the Colorado Supreme Court recognized "flaws" in the *Cablevision* test and "clarif[ied] and restate[d]" the elements in *DCB Const. Co., Inc. v. Central City Dev. Co.*, 965 P.2d 115, 119-20 (Colo. 1998) as follows: (1) at plaintiff's expense, (2) defendant received a benefit (3) under circumstances that would make it unjust for defendant to retain the benefit without paying.

Defendant argues that Plaintiff knew the facts underlying an unjust enrichment claim at the time she filed her original complaint on June 17, 2011 in state court before it was removed. The Court agrees. In that original complaint, the Plaintiff and her mother Josette Gonzales, a named plaintiff at the time, alleged:

> 3.  In 2006, Gonzales purchased a 2002 GMC Envoy, but titled the vehicle in the name of Joseph Garcia ("Garcia"), with whom she was residing at the time, because

he was able to secure a much better interest rate for the vehicle loan.

4.   At the time of purchase, Allstate added the GMC Envoy to Garcia's then-existing auto insurance policy.

5.   At the time Allstate added the GMC Envoy to Garcia's policy, or within a reasonable time thereafter, Allstate knew that Gonzales had an ownership interest in the GMC Envoy; that Gonzales, not Garcia, was the one making all of the monthly loan payments on the vehicle; that Gonzales, not Garcia, was the primary driver of the vehicle; and that Gonzales wanted full auto insurance coverage on the vehicle.

6.   After the GMC Envoy was added to Garcia's policy, Allstate provided Garcia and Gonzales with an itemization of the premiums for the GMC Envoy and for the vehicles owned by Garcia that were already on the policy when the GMC Envoy was added, in order to facilitate Gonzales' direct payment of the premiums due on the GMC Envoy.

7.   Based upon the itemization provided by Allstate, and with Allstate's knowledge and consent, Gonzales paid the premiums due on the GMC Envoy directly to Allstate, and continued to pay those premiums directly to Allstate even after the motor-vehicle crash that is the subject of this action.

8.   Despite the knowledge alleged in paragraphs five and seven above, Allstate never added Gonzales as a named insured to the subject policy, but did finally inquire about doing so after the subject motor-vehicle crash.

9.   Based on Allstate's acceptance of the premiums Gonzales was directly paying on the GMC Envoy, Gonzales reasonably expected that she and her resident minor daughter, Montez, had full coverage under the subject policy.

. . .

13.     Allstate has denied Plaintiffs' claim for UIM coverage and benefits. Complaint and Jury Demand, June 17, 2011, docket #2. Certainly, these allegations reflect that at Gonzales' expense, Allstate received a benefit (paragraphs 5 & 7) allegedly under circumstances that would make it unjust for Allstate to retain the benefit without compensation (paragraphs 9 & 13).

Plaintiff contends that she "was not made aware of the information and knowledge, supporting a motion to amend on the basis of an additional claim for relief, held by Ms. Munoz, until after her deposition was taken and Plaintiff had received her transcript" (Motion, ¶ 17), but she does not explain *what precisely* about Munoz' testimony she did not know. Certainly, Plaintiff knew enough to allege that Gonzales made direct payments to Allstate, that Allstate cashed (deposited) the payments, that Gonzales believed she and her daughter were insured, and that Gonzales allegedly received nothing in return for the payments. Simply because the Plaintiff perceives that Munoz affirmed or admitted such allegations under oath does not equate to Plaintiff's learning new information supporting an amendment to the operative pleading. The Plaintiff does not argue, nor does the Court believe, that Defendant's factual admissions are necessary to allege a claim for quasi-contract/unjust enrichment pursuant to Fed. R. Civ. P. 8.

The Plaintiff fails to demonstrate that she learned "new" information during discovery to support the proposed amended claim. Further, the Plaintiff does not argue her delay is a result of oversight, inadvertence or excusable neglect. Therefore, the Court concludes that the Plaintiff has failed to demonstrate good cause to modify the deadline for amendment of pleadings in this case from November 21, 2011 to June 21, 2012. Further, because the Plaintiff proffered no argument concerning joinder of Gonzales as a plaintiff asserting the existing claims in this case, the Court concludes the Plaintiff has failed to demonstrate good cause to modify the corresponding deadline for joinder of parties. Accordingly, the Court respectfully recommends that the District Court deny Plaintiff's motion to modify the scheduling order.

B.  Motion to Amend

As the Court has concluded that an extension of the deadline for joinder of parties and amendment of pleadings is not justified in this matter, the Court also concludes that Plaintiff's motion to amend is unduly delayed and will result in prejudice to the Defendant.

In the Tenth Circuit, untimeliness alone may be a sufficient basis for denying a party leave to amend. *See Duncan,* 397 F.3d at 1315; *see also Hayes v. Whitman*, 264 F.3d 1017, 1026 (10th Cir. 2001). The important inquiry is not simply whether a plaintiff has delayed, but whether such delay is undue. *Minter*, 451 F.3d at 1206. Delay is undue "when the party filing the motion has no adequate explanation for the delay." *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365-66 (10th Cir. 1993). Thus, "[c]ourts will properly deny a motion to amend when it appears that the plaintiff is using Rule 15 to make the complaint 'a moving target,' to 'salvage a lost case by untimely suggestion of new theories of recovery,' to present 'theories seriatim' in an effort to avoid dismissal, or to 'knowingly delay [] raising [an] issue until the 'eve of trial.'" *Minter*, 451 F.3d at 1206 (citations omitted).

Here, Plaintiff's explanation for the delay is her purported learning of "new" information in May 2012. The Court has already found such explanation inadequate. Further, the Court finds that the proposed amendments at this stage of the case would prejudice the Defendant. Adding a new claim and new party at this late stage (after the discovery cutoff and after the Defendant filed its dispositive motion) likely would necessitate additional discovery and may change the thrust of the case. Forcing the Defendant to expend additional time and money in discovery and possibly amending its dispositive motion, as well as prolonging the disposition of this case, do not serve the ends of justice and efficiency. Therefore, due to the resulting prejudice and because the Plaintiff provides no alternative explanation for the seven-month delay, the Court respectfully recommends that the District Court deny Plaintiff's motion to amend.

**IV.     CONCLUSION**

The Plaintiff has failed to demonstrate good cause to extend the deadline for joinder of parties and amendment of pleadings for seven months, and failed to show her proposed amendments are neither unduly delayed nor prejudicial to the Defendant. Accordingly, based upon the foregoing, this Court respectfully RECOMMENDS that the Plaintiff's Motion to Modify Scheduling Order [filed June 21, 2012; docket #33] and Plaintiff's Motion Seeking Leave of Court to Amend Complaint [filed June 21, 2012; docket #34] be **DENIED**.

Dated this 30th day of July, 2012, at Denver, Colorado.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge